1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                   NORTHERN DISTRICT OF CALIFORNIA
8                          SAN JOSE DIVISION
9

10   KRISTAN STOVALL,                    Case No. 5:18-cv-07540-EJD

          Plaintiff,
11                                        **ORDER GRANTING DEFENDANT'S**
     v.                                   **MOTION FOR SUMMARY**
12                                        **JUDGMENT**
     ALIGN TECHNOLOGY, INC.,
13                                        Re: Dkt. No. 56
          Defendant.
14

15          Plaintiff Kristan Stovall ("Plaintiff") is a former employee of Defendant Align

16   Technology, Inc. ("Defendant" or "Align").  Plaintiff asserts claims for sex discrimination in

17   violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and California Government

18   Code section 12940 ("FEHA"); age discrimination in violation of the Age Discrimination

19   Employment Act of 1967 ("ADEA") and FEHA; retaliation in violation of Title VII; and wrongful

20   termination in violation of California Government Code section 12940.  Second Am. Compl.

21   ("SAC").  Presently before the Court is Defendant's Motion For Summary Judgment, or in the

22   Alternative, Partial Summary Judgment ("Mot.").  Dkt. No. 56.  Plaintiff filed an Opposition, Dkt.

23   No. 57, and Defendant filed a Reply, Dkt. No. 70.  For the reasons stated below, the Court will

24   grant Defendant's motion.

25   **I.      BACKGROUND**

26          Defendant is a medical device company that develops, manufactures, markets and sells the

27   Invisalign system, which uses clear aligners to reposition teeth.  Invisalign is used by

28

United States District Court
Northern District of California

1    Orthodontists and General Practitioners ("GPs").  To prescribe Invisalign, doctors pay Align

2    $1,995 for Certification to learn the benefits of Invisalign and for continuing support, including

3    support from a Territory Manager ("TM").

4         Plaintiff served as a TM for Defendant in the Nashville, Tennessee sales territory

5    ("Territory") from May of 2013 until July 10, 2018, when she was terminated.  During the period

6    at issue, Plaintiff's Regional Manager ("RM") was Spencer Richardson ("Richardson").

7    Richardson, in turn, reported to the Area Sales Director ("ASD"), Kent Braud ("Braud").

8         Defendant evaluates TMs such as Plaintiff based on the "What" (also referred to as the

9    "Numbers") and the "How" (also referred to the "Values").  The "What" relates to sales targets,

10   which are set by Defendant's Sales Analytics team.  Defendant uses three metrics to measure

11   sales: (1) ClinCheck Acceptance ("CCA"), which refers to a doctor submitting an Invisalign case;

12   (2) GP CCA; and (3) Net Receipts.  The "How" relates to required sales activities, including but

13   not limited to engaging with accounts in the territory, logging sales calls in Defendant's customer

14   relationship management ("CRM") software, organizing and driving attendance to Clinical

15   Education ("CE") events, meeting with Invisalign providers, and actively participating in Regional

16   and Area initiatives.  Defendant weighs the "What" and the "How" equally.[1]  To ensure TM

17   engagement, Defendant requires TMs to make a minimum number of calls per day[2] and to log

18   their calls in CRM.  Defendant also expects TMs to have face-to-face contact with customers, such

19   as lunch meetings, for which TMs are reimbursed.  Defendant also expects TMs to "co-travel"

20   with an RM to scheduled appointments and drop-ins occasionally.

21        In 2015, Plaintiff was honored in the Presidents Club for being one of Defendant's top 15

22   sale representatives out of 280 nationwide, and she made the "100% Achievers Club" every year

23   between 2014 and 2017.  In April 2017, Plaintiff began a three-month maternity leave.  Defendant

24

25   [1] Plaintiff disputes that the "What" and "How" are weighted equally, but there is no evidence to
     the contrary.  Plaintiff relies on Richardson's representation that "CCA is the most important part
26   of our business," but does not explain how this business objective affects the relative weight
     Defendant gives to the "What" and "How" requirements.

27
     [2] In January 2018, Align expected TMs to make 30 calls per week.
28   Case No.: 5:18-cv-07540-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
                                          2

1  assigned a female employee, Kim Harkins ("Harkins"), to cover Plaintiff's territory during her

2  maternity leave.

3      Plaintiff returned to work on July 7, 2017.  On August 1 and 2, 2017, Plaintiff had her first

4  co-travel days with Richardson.  Plaintiff advised Richardson that she would need to go home to

5  nurse her infant because her infant had a fever and would not take a bottle.  According to Plaintiff,

6  Richardson responded, "Fine, this is a one-off. Next time your day needs to be packed."  Opp'n at

7  8.  Richardson denies making this comment and denies being upset by the change in schedule.

8  Plaintiff reported Richardson's alleged comment to her former boss, Russell Whorton

9  ("Whorton"), who called Richardson to tell him Plaintiff was concerned about his conduct.

10      Plaintiff contends that after the August 2017 co-travel, Richardson began demanding more

11  of Plaintiff than her five male co-workers.  Among other things, Richardson allegedly required her

12  to (1) attend two (out of three or four) weekend events, even though she did not have any clients

13  attending; (2) create an Excel spreadsheet; (3) report lunch meetings to him; (4) send follow-up

14  emails to doctors' officers after her visits; and (5) provide him with summaries of office

15  meetings.[3]

16      After Plaintiff did not attend two training events—one in September of 2017 and another

17  in December 2017—Richardson informed Human Resources ("HR") that he was concerned about

18  Plaintiff's performance.  Richardson also had concerns about Plaintiff's call logs, expense reports,

19  and customer complaints.

20      In January of 2018, Richardson attended a meeting with Heartland Dental ("Heartland"),

21  Align's largest customer.  Plaintiff's territory had a least 30 Heartland offices, which was over

22  50% of Plaintiff's GP business.  At the meeting, several members of Heartland's leadership team

23  expressed dissatisfaction with the level of support being provided by Plaintiff.

24      Plaintiff took disability leave from April 20, 2018, through May 5, 2018, due to a broken

25  foot.  While Plaintiff was on disability leave, Braud learned that Plaintiff had not responded to an

26

27  ――――――――――――――
[3] It is unclear whether Defendant allegedly instituted these requirements before or during the PIP.

28  Case No.: 5:18-cv-07540-EJD

1    email request to set up co-travel doctors' visits for Align's CEO.   Decl. of J. Joseph Wall, Jr

2    ("Wall Decl."), Dkt. No. 62, Ex. D, Dep. of Kent Braud ("Braud Dep."), Ex. 4.  This prompted

3    Braud to email Defendant's HR business partner, Will Ayala ("Ayala"), a list of performance

4    issues with Plaintiff.  *Id.*  Braud told Ayala he wanted to discuss "next steps" and to "move

5    [Plaintiff] out if possible given the potential of the Nashville territory not being realized and

6    [Plaintiff] showing no drive to do anything but the minimum requirements."  *Id.*

7        Upon her return, on May 7, 2018, Richardson told Plaintiff that he had received negative

8    feedback from three Heartland doctors.  On May 11, 2018, Plaintiff emailed an Align HR

9    Manager, Amanda Le, regarding Richardson, but did not receive a response.  On May 14, 2018,

10   Plaintiff called HR and left a message asking how to file a complaint against Richardson, but did

11   not receive a response.

12       On May 15, 2018, Richardson told Plaintiff she would be placed on a 30-day Personal

13   Improvement Plan ("PIP") for the rest of Q2 because of her (1) low sales numbers, (2) customer

14   complaints, and (3) failure to perform duties.  Ayala and Braud approved placing Plaintiff on a

15   PIP.  Braud concluded that Plaintiff was routinely near the bottom in meeting Align's expectations

16   regarding sales call activity, call reach, values, agility, and accountability.  The PIP required the

17   following:  achieving 95% or above in CCA[4], 100% in GP CCA and 100% in Net Receipts;

18   placing a minimum of six calls per day; submitting a Q2 business plan; sending follow up emails;

19   submitting a call and appointment schedule to Richardson every week; participating in bi-weekly

20   one-on-one calls with Richardson to review performance metrics; and submitting expenses by the

21   end of the month.  Some of these PIP expectations (e.g., six calls per day and developing business

22   plans) were the same for all TMs.

23       According to Richardson, while Plaintiff was on the PIP, she failed to visit accounts; failed

24   to return calls; lacked passion; gave a presentation that was poorly prepared, poorly delivered and

25   lacked substance; deflected blame; and lacked confidence.  Defendant also concluded that Plaintiff

26

27   [4] Richardson lowered Plaintiff's CCA quota to 95%, whereas Align continued to expect other TMs
     to achieve 100%.

28   Case No.: 5:18-cv-07540-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
     4

United States District Court
Northern District of California

1  had failed to fulfill sales goals.

2      On May 18, 2018, three days after being placed on the PIP, Plaintiff informed Ayala that

3  she wanted to file a complaint against Richardson.  She told Ayala that she had an "issue"

4  Richardson's conduct during the co-travel nine months earlier.  Bellafronto Decl., Dkt. No. 56-1,

5  Ex. A, Stovall Dep. at 224:7-9; 225:9-17.

6      On June 14, 2018, Plaintiff texted Heather N. that she had spoken to her attorney, who

7  advised her to let Align fire her so that she could pursue a wrongful termination claim.

8      On June 19, 2018, Ayala emailed Plaintiff the results of the HR investigation.  Ayala

9  explained that he was unable to conclude that there was a violation of Company policy related to

10  Plaintiff's claim of discrimination.  Nevertheless, the Company committed to providing

11  Richardson coaching regarding effective communication with subordinates to avoid confusion.

12      On July 10, 2018, Defendant terminated Plaintiff for failure to meet the PIP.  Plaintiff was

13  forty (40) years old at the time of her termination and was replaced by a female in her early

14  twenties.

15  **II.    STANDARDS**

16      Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant summary judgment

17  only where "there is no genuine issue as to any material fact and . . . the movant is entitled to

18  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Upon such a showing, the court may grant

19  summary judgment on all or part of the claim.  *See id*.

20      To prevail on a summary judgment motion, the moving party must show that there are no

21  triable issues of material fact as to matters upon which it has the burden of proof at trial.  *Celotex*

22  *Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  On issues where the moving party does not have the

23  burden of proof at trial, the moving party needs to show only that there is an absence of evidence

24  to support the non-moving party's case.  *Id*.

25      To defeat a summary judgment motion, the non-moving party may not merely rely on its

26  pleadings or on conclusory statements.  *Id*. at 324.  Nor may the non-moving party merely attack

27  or discredit the moving party's evidence.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v.*

28  Case No.: 5:18-cv-07540-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

*Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).  The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324.

"In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party."  *Howard v. Regents of Univ. of Cal.*, No. 99-1339 SI, 2000 WL 424192, at *4 (N.D. Cal. Apr. 12, 2000) (citing *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630-31 (9th Cir. 1987)).

## III.    DISCUSSION

Defendant moves for summary judgment on all claims.  As to the First and Fourth Causes of Action for sex gender discrimination under Title VII and the FEHA, respectively, Defendant argues that Plaintiff cannot establish a prima facie case of discrimination and further, that Defendant had legitimate nondiscriminatory and non-pretextual reasons for the alleged adverse employment actions.  Defendants makes the same arguments as to the Second and Fifth Causes of Action for age discrimination.  Defendant contends that the Third Cause of Action for retaliation fails because Plaintiff cannot establish but for causation and because Defendant had legitimate nondiscriminatory and non-pretextual reasons for the alleged adverse action.  Defendant seeks judgment in its favor on the Fourth and Fifth Causes of Action for the additional reason that the FEHA does not apply extraterritorially to Plaintiff or her employment in Tennessee.  Defendant contends that it is entitled to judgment as to the Sixth Cause of Action for termination in violation of public policy because the underlying claims for statutory violations fail.  Lastly, Defendant argues that Plaintiff cannot recover punitive damages because there is no evidence that an officer, director or managing agent of Defendant acted with fraud, oppression or malice.

### A.    Sex and Age Discrimination Claims

Disparate treatment is "*intentional* discrimination against one or more persons on prohibited grounds."  *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354 n. 20 (2000) (emphasis in original).  To prevail on a claim of disparate treatment under federal law, Plaintiff must establish a

United States District Court
Northern District of California

1  prima facie case by showing:  "(1) she belongs to a protected class; (2) she was qualified for the

2  position; (3) she was subjected to an adverse employment action; and (4) similarly situated

3  [employees not in her protected class] were treated more favorably."  *Villiarimo v. Aloha Island

4  Air*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *McDonnell Douglas  v. Green*, 411 U.S. 792, 802

5  (1973)).  In the context of a termination, the second prong concerns whether a plaintiff "was

6  performing [her] job in a satisfactory manner[.]"  *Messick v. Horizon Indus.*, 62 F.3d 1227, 1229

7  (9th Cir. 1995).  If the plaintiff states a prima facie case, the burden shifts to the defendant to

8  articulate a legitimate, non-discriminatory reason for the adverse actions.  *See Merrick v. Hilton

9  Worldwide,* 867 F.3d 1139, 1145–46 (9th Cir. 2017); *Diaz v. Eagle Produce Ltd. Partnership,* 521

10  F.3d 1201(9th Cir. 2008).  If the defendant meets its burden, "the presumption of discrimination

11  'drops out of the picture,'" and the plaintiff must produce specific and substantial evidence that the

12  defendant's stated reasons were pretextual.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d

13  1018. 1028 (9th Cir. 2006) (quoting *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 143

14  (2000)); *Aragon v. Repub. Silver State Disposal*, 292 F.3d 654, 660-61 (9th Cir. 2002).

15      The analytical framework above applies to Plaintiff's federal age discrimination claim.

16  *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (*McDonnell Douglas*

17  framework applies to ADEA discrimination claim).  It also applies to her state law discrimination

18  claims.  *See Guz*, 24 Cal.4th at 354 ("Because of the similarity between state and federal

19  employment discrimination laws, California courts look to pertinent federal precedent when

20  applying our own statutes.").

21      When an employer moves for summary judgment, as in this case, the burdens are reversed

22  because the moving party bears the initial burden.  *Dep't of Fair Emp't and Hous. v. Lucent

23  Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011).  Thus, to prevail on a summary judgment motion,

24  the employer must show either that (1) plaintiff cannot establish one of the elements of her claim

25  or (2) there was a legitimate, nondiscriminatory reason for its decision to take an adverse

26  employment action.  *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013).  If

27  the employer meets this burden, the employee must demonstrate either "that the defendant's

28  Case No.: 5:18-cv-07540-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
7

1  showing was in fact insufficient or . . .  that there was a triable issue of fact material to the

2  defendant's showing."  *Lucent*, 642 F.3d at 746.

3      For the reasons discussed below, the Court finds that Defendant has met its burden on

4  summary judgment to show that Plaintiff cannot make the requisite prima facie showing that (1)

5  she performed her job satisfactorily pre-PIP and during the PIP; and (2) similarly situated

6  employees not in her protected class were treated more favorably.  Further, the Court finds that the

7  undisputed evidence shows there were legitimate, nondiscriminatory, nonpretextual reasons for

8  placing her on the PIP and for termination.

9          **1.  Plaintiff's Prima Facie case:  Job Performance**

10      For purposes of Plaintiff's prima facie case on summary judgment, the Court will treat the

11  PIP and termination as separate adverse employment actions.  *Giron v. Tyco Elec. Corp.*, 762 Fed.

12  Appx. 233, 237 (6th Cir. 2019) (treating PIP as adverse employment action because plaintiff's

13  placement on a PIP preceded her termination).

14      Defendant contends that the undisputed evidence shows Plaintiff did not meet the "What"

15  and "How" requirements, and therefore she cannot show satisfactory job performance.  The Court

16  agrees.  Before Plaintiff was placed on the PIP, she did not meet the "How" requirements,

17  although there is a dispute regarding whether Plaintiff met the "What" requirements.  While on the

18  PIP, she did not meet the "What" requirements, although there is a dispute regarding whether she

19  met the "How" requirements.  Because Defendant weighs the "What" and "How" requirements

20  equally, the failure to meet the "How" requirements pre-PIP and the "What" requirements during

21  the PIP precludes Plaintiff from making a prima facie case of discrimination, as explained below.

22          a.  Plaintiff's Job Performance Pre-PIP

23              i.  The "What" Employment Requirements Pre-PIP

24      Defendant contends that Plaintiff failed to meet quarterly sales goals for Q3 and Q4 of

25  2017, as well as Q1 of 2018, which were the three quarters prior to the PIP.  Defendant also

26  contends Plaintiff was the worst performing TM on Richardson's team over four quarters and

27  missed her three key quarterly sales quotas ten out of twelve times from Q3 2017 through the end

United States District Court
Northern District of California

of the PIP.

Plaintiff argues that failure to meet mid-year targets is immaterial because Defendant evaluates job performance using yearly data.  Wall Decl., Dkt. No. 67, Ex. I, Stovall Dep. at 87:13-15 ("as long as you hit your number overall for the year, they were pleased with your performance").  Indeed several of Plaintiff's male coworkers failed to meet quarterly sales quotas, but were not placed on a PIP, much less terminated.  Gerry Strange ("Strange") missed three consecutive quarters (Q3 2015, Q4 2015, and Q1 2016), but he was not placed on a PIP.  Kevin Caraway ("Caraway") missed quarterly, half-yearly, as well as annual quotas, but was not placed on a PIP.  Wall Decl., Dkt. No. 67, Ex. F, Caraway Dep. at 41-42:12.  Similarly, Boyce Tuten ("Tuten") failed to meet quarterly, half-yearly, and yearly quotas, but was not placed on a PIP. Wall Decl., Dkt. No. 68, Ex. K, Tuten Dep. at 73.  Therefore, Plaintiff's failure to meet quarterly sales quotas does not necessarily mean she cannot make a prima facie showing of satisfactory performance of the "What" requirements.

Plaintiff has presented some evidence of satisfactory performance of the "What" requirements: her 2017 Performance Review and the Final Mixed Master Dashboard for 1H 2018. She received a "Fully Meets" rating for revenue, CCAs and Net Receipts goals in 2017.  Stovall Decl., Dkt. No. 59, Ex. F.  The Final Mixed Master Dashboard for 1H 2018 sales figures set forth below show Plaintiff outperformed coworkers in certain areas:

| EMPLOYEE | NET REVENUE TO TARGET | NET REVENUE | PERCENTAGES OF TOTAL CCA |
|---|---|---|---|
| Plaintiff | 94% | $1,474,056 | 91% |
| Caraway | 94% | $1,380,805 | 95% |
| Strange | 89% | $1,939,637 | 90% |
| Tuten | 83% | $1,236,022 | 89% |

Opp'n at 18-19 (citing Richardson Dep., 153:15-155:19, Ex. 9).[5]  Defendant did not terminate

---

[5] Exhibit 9 and pages 153 through 155 of Richardson's deposition testimony are not in the record. The Court, however, assumes that this evidence supports Plaintiff's position because Defendant

United States District Court
Northern District of California

United States District Court
Northern District of California

1    (much less place on a PIP) Plaintiff's coworkers listed above, even though their sales figures were

2    lower than Plaintiff's figures in certain areas.

3        As a general matter, "[t]he requisite degree of proof necessary to establish a prima facie

4    case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level

5    of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)

6    (citation omitted) (emphasis added); *see also Sischo-Nownejad v. Merced Cmty. College Dist.*,

7    934 F.2d 1104, 1110-11 (9th Cir. 1991) ("[T]he amount [of evidence] that must be produced in

8    order to create a prima facie case is very little.") (quotation marks omitted).  Plaintiff's "Fully

9    Meets" ratings in 2017 meets this minimal standard, despite Defendant's assertion that Plaintiff

10   attained the rating only because of Harkins' performance while Plaintiff was on leave.  Plaintiff's

11   relatively higher sales figures for the first half of 2018 in certain categories also meets the minimal

12   standard, despite Defendant's contention that sales data from other quarters (or other time frames),

13   as well as sales data trends, support an inference of unsatisfactory job performance.  "At the prima

14   facie stage, the plaintiff need not 'eliminate the possibility that [s]he was laid off for inadequate

15   job performance,' because such a requirement would 'conflate the minimal inference needed to

16   establish a prima facie case with the specific, substantial showing' required at the pretext stage of

17   the *McDonnell Douglas* analysis." *Contreras v. Mee*, No. 15-3963 BLF, 2017 WL 2955748, at *5

18   (N.D. Cal. July 11, 2017) (quoting *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654,

19   659 (9th Cir. 2002)).

20       Plaintiff's evidence raises an issue of material fact as to whether she satisfactorily

21   performed the "What" requirements of her position pre-PIP.  This does not end the analysis,

22   however, because employees must also meet the "How" Requirements.  Plaintiff did not meet the

23   "How" requirements pre-PIP for the reasons discussed below.

24           ii.    The "How" Employment Requirements Pre-PIP

25       Defendant contends that Plaintiff (1) failed to log calls; (2) failed to log automobile

26

27   does not object to the evidence and Federal Rule of Civil Procedure 11(b) ensures that factual
     contentions in Plaintiff's brief have evidentiary support.

28

1    mileage for her trips; (3) failed to participate in sales activities; (4) was the lowest ranked TM in

2    Braud's area for Account Penetration, Accounts Needing Attention and Accounts with No

3    Activity Ever; and (5) received customer complaints.

### Logging Calls Pre-PIP

5        In January 2018, Richardson told TMs they must complete thirty sales "calls" per week

6    (Richardson Decl., Dkt. No. 56-2, ¶ 34) and "log" the calls using CRM.  Braud Decl., Dkt. No. 56-

7    3., ¶ 4.  There is no evidence that Plaintiff fulfilled this requirement prior to being placed on the

8    PIP.  Plaintiff attests that *during the PIP*, she made a minimum of six calls per day consisting of at

9    least three pre-planned anchor calls and an additional three non-appointed calls.  Stovall Decl., ¶

10   12 (emphasis).  However, she does not provide any attestation regarding calls she made *prior to*

11   *the PIP*.  Instead, she asserts that she experienced technical difficulties logging calls and

12   repeatedly sought IT assistance, but was unsuccessful in resolving the issues.  Wall Decl., Dkt.

13   No. 67, Ex. I at 30-31, 39.  The technical difficulties may be an explanation for Plaintiff's inability

14   to log calls using CRM.  But there is no other record or evidence to establish that she made the

15   prerequisite calls such that they could have been logged but for the technical difficulties.  Thus,

16   the undisputed evidence shows Plaintiff did not satisfactorily perform the logging calls

17   requirement.

### Logging Mileage for Trips Pre-PIP

19       Defendant uses a software called Runzheimer to track mileage and personal vehicle use.

20   Richardson Decl., ¶ 45.  The Runzheimer/mileage report is an indication of how frequently a TM

21   is in the field visiting doctors.  Braud. Decl., ¶ 13.  Plaintiff was "out of compliance" with

22   Runzheimer.  Richardson Decl., ¶ 45.  All but two of the forty-three TMs in Braud's group logged

23   sales calls in Runzheimer; Plaintiff was one of them.  Braud Decl., Ex. A.  The failure to log trips

24   in Runzheimer supports Defendant's assessment that Plaintiff performed her job unsatisfactorily.

### Sales Activities Pre-PIP

26       TMs are required to support CE events.  Richardson Decl., ¶ 10.  From Q2 2017 through

27   Q2 2018, every TM on Richardson's team worked either a weekend or night event.  *Id.* ¶ 13.

28   Case No.: 5:18-cv-07540-EJD

United States District Court
Northern District of California

Plaintiff missed at least two events—one in September of 2017 and another in December 2017. Two weeks before the September 2017 event, Plaintiff notified Richardson she would not attend because it conflicted with her son's baptism.  Richardson Decl., ¶ 24.  Plaintiff told Richardson it made "the most business sense" to have two other TMS attend the December 2017 event.  *Id*. ¶ 27. Ultimately, Richardson worked the events by himself.

The record suggests Richardson excused Plaintiff from attending these events.  Richardson Decl. ¶ 24 ("I thanked Plaintiff for letting me know, and I covered the training."); ¶ 28 ("I granted every request not to attend an evening or weekend event that Plaintiff made to me, and attended the events myself.  I never forced Plaintiff or any other TM to attend an evening or weekend event.").  Therefore, the failure to attend the September 2017 and December 2017 events does not necessarily support a finding of unsatisfactory job performance.

<u>Relative Rank re Account Penetration, Accounts Needing Attention and Accounts with No Activity Ever Pre-PIP</u>

In May 2018, just prior to the PIP, Plaintiff was the lowest ranked TM in Braud's area in: Account Penetration (percentage of accounts a TM had visited); Accounts Needing Attention (number of accounts a TM had not visited in a quarter); and Accounts with No Activity Ever (accounts that had never been called on by the TM).  Braud Decl., ¶ 18, Ex. E.  This evidence, which is unrefuted by Plaintiff, supports Defendant's determination of unsatisfactory job performance.

<u>Customer Complaints Pre-PIP</u>

Courts in the Ninth Circuit have regularly found that customer complaints are a legitimate nondiscriminatory reason for terminating employment.  *Doyle v. Galderma, Inc.*, No. 19-5678 TSH, 2021 WL 1721069, at *19 (N.D. Cal. Apr. 30, 2021) (citing *Parks v. Bd. of Trs. of Cal. State Univ.*, 813 F. Supp. 2d 1182, 1194–95 (E.D. Cal. 2011) (granting defendant's summary judgment motion on plaintiff professor's claims for, inter alia, age discrimination under FEHA where disciplinary action was based on complaints by students)); *Qin Li v. City & Cty. of Honolulu*, No 14-573 LEK, 2017 WL 3015827, at *11 (D. Haw. July 14, 2017) (customer complaints are a

United States District Court
Northern District of California

1   legitimate, nondiscriminatory reason for termination).

2       Before being placed on the PIP, Defendant received complaints from customers.  In

3   January 2018, members of Heartland's leadership team told Richardson they were dissatisfied

4   with Plaintiff's level of support.  Decl. of Eric C. Bellafronto ("Bellafronto Decl.), Dkt. No. 56-1,

5   Ex. E, Braud Dep. at 64:10-65:15.  Sharon Fennell ("Fennell") of Heartland also called Braud to

6   complain that Plaintiff did not keep appointments, did not follow-up, and played the same training

7   video multiple times.  *Id.*  Fennel told Braud Plaintiff's coworkers provided better support.  *Id.*

8   Richardson and Plaintiff met with Fennell and Marian Taylor ("Taylor"), Heartland's Regional

9   Support Administrator, to mend the relationship.

10      On April 18, 2018, Richardson gave another presentation to Heartland's leadership team

11   and heard more complaints.  Richardson Decl., ¶ 39.  On April 25, 2018, a Heartland practice

12   manager emailed Richardson a list of perceived deficiencies in Plaintiff's level of support.  *Id.* ¶

13   39, Ex. L.  On April 29, 2018, Richardson received additional complaints.  *Id.* ¶ 40, Ex. M.

14   On May 7, 2018, Defendant told Plaintiff three Heartland doctors, Drs. Gordon, Cermak and

15   Kapur, complained about her level of support.  Stovall Dep. at 276.  On May 9, 2018, another

16   customer, Tiffany McClaran, sent an email to Richardson complaining about Plaintiff's

17   unresponsiveness.  Braud Decl., Ex. E.

18      Plaintiff raises several arguments in response.  First, Plaintiff argues that the customer

19   complaints are hearsay and should not be considered.  Although the customer complaints may be

20   hearsay and thus inadmissible to establish the truth of the matters asserted in the complaints, they

21   are admissible to show notice to Defendant.  *See Kelley v. Airborne Freight Corp.*, 140 F.3d 335,

22   346 (1st Cir. 2021) ("We agree that a customer complaint offered to show, for example, that a

23   decision-maker had notice of the complaint, rather than to prove the specific misconduct alleged in

24   the complaint, is not barred by the hearsay rule.").

25      Second, Plaintiff is dismissive of the customer complaints, asserting that personality

26   conflict or disagreement "is life."  Opp'n at 19.  Relatedly, she suggests that the complaints were

27   about insignificant matters, such as a request for a window sticker.  However, the Company

28   Case No.: 5:18-cv-07540-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
                                    13

United States District Court
Northern District of California

requires TMs to provide customer support (Richardson Decl., ¶ 2), and customer complaints are evidence that Plaintiff did not provide that support.  An employer "can legitimately expect an employee's performance not to engender customer complaints." *Parada v. Great Plains Int'l of Sioux City*, 483 F. Supp. 2d 777, 807 (N.D. Iowa 2007).  Moreover, Defendant did not believe the complaints were insignificant.  As mentioned previously, in early 2018, Richardson and Plaintiff met with Fennel and Taylor of Heartland to "reset the partnership."  Richardson Dep., 125:13-126:8; 142:7-22; 144:14-145:11.  After the meeting, Heartland still raised concerns about Plaintiff. Richardson Dep., 124:18-125:6.

Third, Plaintiff contends that Dr. Gordon never complained to Defendant.  When Plaintiff texted Dr. Gordon to ask about negative feedback, Dr. Gordon responded, "Hi, well, that's news to me.  Who said that to him?  I think you're amazing, Kristan.  I'm very confused about who would have conveyed that to him."  Stovall Dep. at 286, Dkt.  No. 67.  *Id*. at 301.  Richardson explained at his deposition that it was "Dr. Gordon's office and leadership" who felt that they were not getting the support."  Richardson Dep., 217-19. Dkt. No. 70-3.

Setting aside the questionable "complaint" from Dr. Gordon or her office, there are several complaints that remain uncontradicted.  These include complaints from Drs. Cermak, Kapur, McMcClaran, as well as members of Heartland's organization, including Fennell and Taylor.[6] That Plaintiff received favorable reviews from other customers (Dr. Shane Witherow and Clayton Cummings) does not contradict Defendant's evidence that it received many complaints.

In sum, the undisputed evidence supports Defendant's assessment that Plaintiff failed to satisfactorily perform the "How" requirements of her position because she failed to log calls; failed to log miles; was the lowest ranked TM in Braud's area in Account Penetration, Accounts Needing Attention and Accounts with No Activity Ever; and received many customer complaints. Thus, Defendant has met its burden on summary judgment to negate a prima facie case of

---

[6] Plaintiff does not deny that Dr. Kapur complained about her missing a meeting, but explains that she missed it because of a change in schedule of which she was unaware.  Stovall Decl., ¶ 11. There is no information in the record to explain why she was unaware of the change in schedule.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    discrimination regarding the decision to place Plaintiff on a PIP.

2              b.   Plaintiff's Job Performance on the PIP

3         The PIP required Plaintiff to meet the following "What" and "How" requirements:  achieve

4    95% or above in CCA, 100% in GP CCA and 100% in Net Receipts; place a minimum of six calls

5    per day; submit a Q2 business plan; send follow up emails; submit a call and appointment

6    schedule to Richardson every week; participate in bi-weekly one-on-one calls with Richardson to

7    review performance metrics; and submit expenses by the end of the month.  Each is discussed

8    below.

9              i.    The "What" Requirements of the PIP

10        Plaintiff acknowledges she did not meet the PIP sales quota requirements.  Stovall Decl., ¶

11   12.  She missed the GP CCA number by 8 out of 217 cases and missed CCA by 17 out of 572

12   cases.  She characterizes these misses as relatively small, but "an employee's subjective personal

13   judgments of her competence alone do not raise a genuine issue of material fact."  *Bradley v.*

14   *Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir. 1996).  The undisputed evidence shows

15   Plaintiff did not satisfactorily perform the "What" requirements of her job while on the PIP.

16             ii.   The "How" Requirements of the PIP

17        Defendant contends Plaintiff failed to meet the PIP "plan deliverables,"[7] but only addresses

18   three of them:  logging calls, bi-weekly one-on-one calls with Richardson; and sending follow-up

19   emails.  Plaintiff raises a material dispute as to each of these.

20                         Logging Calls

21        Plaintiff represents that during the PIP, she made a minimum of six calls per day.  Stovall

22   Decl., ¶ 12.  Defendant is dubious of Plaintiff's representation because the calls were not logged in

23   CRM.  Nevertheless, at the summary judgment stage, the Court does not weigh conflicting

24   evidence, and draws all inferences in the light most favorable to the nonmoving party.  *Howard*,

25   2000 WL 424192, at *4.  Plaintiff's evidence raises a genuine issue regarding whether she

26

27   ───────────────
     [7]  Bellafronto Decl., Dkt. No. 56-1, Ex. B, Ayala Dep. at 225:4-13.
28   Case No.: 5:18-cv-07540-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
                                    15

1   satisfied the PIP requirement to log calls.

2   <u>Participating in bi-weekly one-on-one calls with Richardson</u>

3   Plaintiff satisfied the requirement to participate in bi-weekly one-on-one calls with

4   Richardson.  Bellafronto Decl., Dkt. No. 56-1, Ex. A, Stovall Dep. at 221:8-11.

5   <u>Sending Follow-up Emails</u>

6   Richardson contends Plaintiff failed to send follow-up emails in early June 2018.

7   Richardson Decl., ¶ 63, Ex. AB.  In response, Plaintiff explains that the doctors she had seen

8   during that day and evening "did not want [her] to follow up with them."  Stovall Decl., ¶ 9.

9   Plaintiff's evidence raises a genuine issue of material fact on this issue.

10   In sum, the evidence shows that while on the PIP, Plaintiff did not meet the "What"

11   requirements.  Because she did not meet the "What" requirements, she cannot show she

12   satisfactorily performed her job while on the PIP, even though there are issues regarding whether

13   she met three of the "How" requirements.  It follows that she cannot establish a prima facie case of

14   discrimination regarding her termination.

15   **2.  Plaintiff's Prima Facie Case:  Similarly Situated Employees**

16   Although Plaintiff's inability to show satisfactory job performance is a sufficient basis to

17   grant Defendant's motion for summary judgment, the Court next considers Defendant's contention

18   that Plaintiff cannot satisfy the fourth element of a prima facie case of discrimination.  The Court

19   concludes she cannot.

20   In order to satisfy the fourth element of a prima facie case, a plaintiff claiming

21   discrimination must show that similarly situated employees not in her protected class were treated

22   more favorably.  *Villiarimo*, 281 F.3d at 1062.  "[I]ndividuals are similarly situated when they

23   have similar jobs and display similar conduct."  *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th

24   Cir. 2003).  "The employees' roles need not be identical; they must only be similar 'in all material

25   respects.'"  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (quoting *Moran v.*

26   *Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).

27

28

a.   Male Comparators

To satisfy the fourth element of her prima facie case, Plaintiff points to three male TM comparators—Strange, Caraway and Tuten—who were never placed on a PIP or terminated—even though they failed to meet quarterly, half-year, and annual sales goals at some point during their careers.  The failure to meet sales quotas is some evidence that they displayed "similar conduct" regarding the "What" requirements of their jobs.  As to the "How" requirements, the male comparators received Manager Evaluations that are, arguably, similar to Plaintiff's, as summarized below.

| EMPLOYEE | MANAGER EVALUATIONS |
|---|---|
| Plaintiff | 2013-2016: "Occasionally Exceeds" to "Fully Meets" [8] 2017: "Partially Meets"[9] |
| Strange | 2014-2015:  "Occasionally Meets"[10] 2018:  "Partially Meets"[11] |
| Caraway | 2017:  "Partially Meets"[12] 2018:  "Fully Meets"[13] |
| Tuten | 2018:  "Does Not Meet"[14] |

Defendant, however, instituted the PIP and ultimately terminated Plaintiff because of a

---

[8]  Stovall Decl., Exs. B, C, D, E.

[9]  *Id.*, Ex. F.

[10]  Opp'n at 14 (citing Wall Decl., Dkt. No. 68, Ex. J, Strange Dep. at 30:2-31:12, Ex. 1).

[11]  *Id.* (citing Strange Dep. at 43:5-44:4).

[12]  *Id.* at 15 (citing Wall Decl., Dkt. No. 65, Ex. F, Caraway Dep. at 48:7-16, Ex. 3).

[13]  *Id.* at 16 (citing Wall Decl., Dkt. No. 66, Ex. H, Richardson Dep. at 176:6-177:9).

[14]  *Id.* (citing Wall Decl., Dkt. No. 68, Ex. K, Tuten Dep. at 73:9-80:12).

Case No.: 5:18-cv-07540-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1 combination of perceived deficiencies in the "What" and "How" over a period of time.  From Q3

2 2017 to Q2 2018, Plaintiff missed her quarterly sales quotas ten out of twelve times.[15]  Moreover,

3 Defendant identified specific deficiencies that led to the PIP and termination, including customer

4 complaints, the failure to log calls, the failure to log miles, and the fact that Plaintiff was the

5 lowest ranked TM in Braud's area in Account Penetration, Accounts Needing Attention and

6 Accounts with No Activity Ever.

7         There is no evidence of any male comparator with similar job performance issues.  In

8 particular, there is no evidence of any male comparators receiving customer complaints, including

9 complaints from Align's largest customer.  Richardson also received several customer complaints

10 about Plaintiff while she was on the PIP.  Richardson Decl., Exs. E, AC, AD, AE.  One customer

11 told Richardson, "I saw no improvement in [Plaintiff]s visits. . . . I will not be scheduling any

12 further events with [her]."  *Id.*, Ex. AC.  In response, Plaintiff cites to positive customer reviews

13 from Angela Simpson, Kyle Coghlan, Mark Mappes, and Mary Cay Koen in 2018.  Stovall Decl.,

14 ¶ 10.  The positive customer reviews, however, do not negate the negative customer reviews.

15 There is also no evidence that the male comparators failed to log calls to the extent Plaintiff did.

16 Likewise, there is no evidence that the male comparators failed to log mileage for client meetings.

17 Thus, the male comparators did not "display similar conduct" to Plaintiff's conduct.  It follows

18 that Plaintiff cannot satisfy the fourth element of her prima facie case of sex discrimination, which

19 is an additional independent basis to grant Defendant summary judgment on that claim.  *See*

20 *Wheeler v. Chertoff*, No. 08-1738 SBA, 2009 WL 2157548, at *6 (N.D. Cal. 2009) (granting

21 summary judgment where plaintiff failed to show similarly situated employees were treated more

22

23 _____

24 [15] Plaintiff disputes this evidence, citing to her 2017 Performance Review.  However, her 2017
Performance Review does not capture quarterly sales date for Q3 2017 through Q2 2018, and
25 therefore does not contradict Defendant's evidence.  To defeat summary judgment, Plaintiff "must
do more than simply show that there is some metaphysical doubt as to the material facts."  *See*
26 *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  Rather, Plaintiff must
come forward with "specific facts showing that there is a *genuine issue for trial.*"  *Id.* (emphasis in
27 original).  Plaintiff has not met this burden.

28 Case No.: 5:18-cv-07540-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
18

1  favorably).

2           b.  Comparators Under 40 Years Old

3           Plaintiff relies on two groups of "comparators" to support her age discrimination claim.

4  First, she relies on evidence of alleged age discrimination against other employees over the age of

5  forty.  Pl's Separate Statement, Dkt. No. 58, at 10.  For example, Jill Cadigan ("Cadigan"), sued

6  Defendant for discrimination, alleging, among other things, that her manager, Lance Johnson,

7  treated her differently than employees under the age of forty.  Wall Decl., Dkt. Nos. 63-64, Ex. E,

8  Cadigan Dep. at 16:1-3, Ex. 5-6.  Another female employee, Lynn Weeks ("Weeks"), filed a

9  charge of discrimination against Defendant with the California Department of Fair Employment

10 and Housing, claiming her managers, Harry O'Connell and Steve Moss, targeted her and made

11 discriminatory comments.  Wall Decl., Dkt. No. 69, Weeks Dep. at 30:22-23, 37:3-9, Ex. 2.

12 Plaintiff also contends that Heather Neal ("Neal") and Rachel Bryant ("Bryant") were "pushed out

13 of" Align because they were over forty years old, and further that it was common knowledge

14 among Align employees that the company engages in age discrimination.  Stovall  54:9-55:16.

15 Plaintiff further contends that Terri Nix ("Nix"), Chistina Landino ("Landino"), Julie Hayes

16 ("Hayes"), and Mary Yetter ("Yetter") were threatened with a PIP or placed on a PIP.  *Id.* at 61:1-

17 62:2, 67:12-25.  Although these employees might be victims of discrimination, they are not

18 comparators, that is, employees under the age of forty who were similarly situated and treated

19 more favorably than Plaintiff.

20         Second, Plaintiff identifies Strange, Caraway and Boyce as employees under the age of

21 forty years who were similarly situated to her and treated more favorably.  However, Strange was

22 forty-three years of age during the relevant time and there is no evidence of Boyce's age in the

23 record.  Ayala Decl., Dkt. No. 56-4, ¶ 21.  Therefore, Strange and Boyce cannot be considered

24 comparators.[16]  This leaves only Caraway as a potential comparator; he was thirty-eight years of

25

26 [16] It is not the Court's role to find evidence of Boyce's age in the record.  *Keenan v. Allan*, 91 F.3d
   1275, 1279 (9th Cir. 1996) (It is not the court's task "to scour the record in search of a genuine
27 issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the
   evidence that precludes summary judgment.") (*quoting Richards v. Combined Ins. Co.*, 55 F.3d
28 Case No.: 5:18-cv-07540-EJD

1   age at the relevant time.  However, as previously discussed regarding the sex discrimination claim,

2   there is no evidence that he had job performance issues similar to Plaintiff's.

3      Plaintiff's inability to present any evidence to support the fourth element of her prima facie

4   case is an independent ground for granting summary judgment on her age discrimination claim.

5        **3.  Defendant's Proffered Business Reasons for the PIP and Termination**

6      Although the absence of proof as to the second and fourth elements of Plaintiff's prima

7   facie case of discrimination is sufficient grounds to grant summary judgment, the Court also finds

8   that Defendant has proffered legitimate business reasons for placing Plaintiff on the PIP and

9   terminating her employment for reasons already discussed.

10         **4.  Evidence of Pretext**

11      Even if Plaintiff could establish a prima facie case of discrimination, she is faced with the

12   burden of presenting evidence of pretext.  The Court finds that the evidence of pretext is minimal,

13   and hence insufficient to defeat summary judgment.

14      The Ninth Circuit has instructed:

15       "[A] plaintiff can prove pretext in two ways: (1) indirectly, by
16       showing that the employer's proffered explanation is 'unworthy of
    credence' because it is internally inconsistent or otherwise not
17       believable, or (2) directly, by showing that unlawful discrimination
    more likely motivated the employer." "All of the evidence [as to
18       pretext]—whether direct or indirect—is to be considered
    cumulatively." Where the evidence of pretext is circumstantial, rather
19       than direct, the plaintiff must present "specific" and "substantial"
    facts showing that there is a genuine issue for trial. However, that
20       requirement is tempered by our observation that, in the context of
    Title VII claims, the burden on plaintiffs to raise a triable issue of fact
21       as to pretext is "hardly an onerous one."

22   *Noyes v. Kelly Services*, 488 F.3d 1163, 1170 (9th Cir. 2007). The focus of a pretext inquiry is

23   whether the employer's stated reason was honest, not whether it was accurate, wise, or well-

24   considered."  *Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1221 (W.D. Wash. 2018) (quoting

25   *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)).

26   

27   247, 251 (7th Cir. 1995)).

28   Case No.: 5:18-cv-07540-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff proffers six categories of evidence to show pretext in support of her sex

2   discrimination claim:  (1) Plaintiff's higher sales percentages in 2018 compared to three male

3   coworkers; and (2) Defendant's allegedly disparate treatment of women; (3) selective enforcement

4   of sales goals; (4) "manipulation" of sales numbers and metrics by which to judge a person's

5   performance; (5) disparaging remarks regarding women and, in particular, working mothers, made

6   by various supervisors within Align; and (6) refusal to identify which customers made complaints.

7   None of these categories of evidence, individually or in the aggregate, amounts to "specific" and

8   "substantial" facts showing there is a genuine issue for trial.

9        a.   Plaintiff's Sales Percentages in 2018

10   To show pretext, Plaintiff relies on her rankings in the 2018 "Final Mixed Master

11   Dashboards," as well as her ranking as of June 14, 2018, as the second highest TM in the entire

12   Southeast Region "in terms of receiving a SPIFF as a result of GP cases she closed."  Opp'n at 13.

13   Plaintiff, however, achieved these rankings after she was placed on the PIP, and therefore they do

14   not prove any pretext in Defendant's decision to place her on the PIP.  As for her termination, the

15   2018 rankings are too insubstantial to raise a genuine issue.  They only capture two points in time

16   and do not overcome all the other relatively weak sales figures and trends throughout 2017 and the

17   first half of 2018.  At the end of 2017, Plaintiff missed most of her targets in the three quarters she

18   worked in 2017.  Richardson Decl., ¶ 31.  In Q3 2017, Plaintiff ended 8% lower than Harkins in

19   CCA (dropping 109% to 101%), and 11% lower in Net Receipt (dropping 111% to 100%).  *Id.* ¶

20   32.  In Q4 2017, Plaintiff dropped another 7% points in CCA to 93%, and dropped another 9% in

21   Net Receipts to 91%.  *Id.*  In the second half of 2017, Plaintiff averaged: 97% CCA; 84.5% GP

22   CCA; and 95.5% Net Receipts.  *Id.*  ¶ 33.  At the end of 2017, the Nashville territory achieved the

23   following numbers for the entire year (including Harkins' results): CCA – 100.25%; GP CCA -

24   81%; and Net Receipts – 101.5%.  *Id.*  Without Harkins' sales numbers, Plaintiff would have

25   missed every single key yearly sales target for 2017.  *Id.*  Moreover, it is undisputed that Plaintiff

26   ultimately failed to achieve any of the sales goals required by the PIP.

27        b.   Defendant's Treatment of Women

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff relies on the fact that she was the only woman on her sales team.  Richardson, however, did not select the employees on his team; he inherited the team from another regional manager.  Moreover, Defendant added women to Richardson's team.  Defendant hired a woman when Plaintiff went on maternity leave, and hired another woman when Plaintiff was terminated.  Although hiring more women does not necessarily insulate an employer from a sex discrimination claim, the fact that Plaintiff was the only woman on her sales team does not tend to show pretext.

Plaintiff next contends pretext may be inferred from Defendant's treatment of other women, including Nail, Bryan, Nix, Landino, Hayes, and Yetter.  Although a plaintiff may use so-called "me too" evidence in some circumstances to establish discriminatory motive, there must be evidence that the other allegedly wronged employees were similarly situated to Plaintiff.  *See Johnson v. United Cerebral Palsy/Spastic Children's Found.*, 173 Cal. App. 4th 740, 759 (2009) (finding "me too" evidence of discrimination was substantial evidence of pretext where the other wronged employees "worked at the same facility where plaintiff worked, [and] they were supervised by the same people that supervised plaintiff").  Here, there is no evidence that Richardson and Braud, the decisionmakers in Plaintiff's case, were involved in the alleged mistreatment of Nail, Bryan, Nix, Landino, Hayes, or Yetter.  Therefore, Plaintiff's "me too" evidence has some minimal relevance but does not rise to substantial evidence of pretext.  *See Day v. Sears Holdings Corp.*, No. 11-9068 MMM, 930 F. Supp. 2d 1146, (C.D. Cal. Mar. 13, 2013) (holding retaliatory conduct against another employee was not relevant to plaintiff's claim because it involved different decision-maker); *see also Machado v. Johnson*,  191 Fed. Appx. 531, 533 (9th Cir. 2006) (Unpub. Disp.) (same).

### c.  Purportedly Selective Enforcement of Sales Goals

Plaintiff contends that Defendant engaged in selective enforcement of sales goals.  She essentially argues that Defendant should have relied on different sales quotas, measured her performance over a time period of her choosing, or not required mandatory sales activities.  It is not for the Court, however, to decide whether Defendants should have used different or better metrics to measure job performance.  Shokri, 311 F. Supp. 3d at 1221.  In the context of

Case No.: 5:18-cv-07540-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   evaluating pretext, the inquiry is whether there are legitimate reasons for the alleged adverse

2   action. *Fu v. Walker Parking Consultants*, 796 F. Supp. 2d 1148, 1155 (N.D. Cal. 2011).

3   Legitimate reasons are "reasons that are *facially unrelated to prohibited bias*, and which, if true,

4   would thus preclude a finding of *discrimination*." *Id.* (quoting *Guz*, 24 Cal.4th at 358 (emphasis

5   in original)).  Here, Defendant's stated reason for placing Plaintiff on the PIP and for her

6   termination was the failure to achieve certain sales goals.  The data Defendant relies on supports

7   its determination that Plaintiff failed to achieve the sales goals.  In particular, the sales data shows

8   Plaintiff failed to meet the sales goals defined in the PIP.  This is a facially neutral,

9   nondiscriminatory reason for its actions.  Plaintiff has not shown that Defendant's enforcement of

10   its sales goals is pretextual.

11                    d.   "Manipulation" of Sales Numbers and Metrics

12          Plaintiff contends Defendant manufactures sales numbers and manipulate metrics in order

13   to target an employee, but offers no evidence that this was done to her.  Relatedly, she argues that

14   Defendant inflated "How" scores for male employees to make up for low "What" ratings, but

15   offers no evidence to support her contention.  The mere suggestion that facts are in controversy is

16   not sufficient to defeat summary judgment.  *See Matsushita*, 475 U.S. at 587 (the nonmoving party

17   must come forward with "specific facts showing that there is a genuine issue for trial); *see also,*

18   *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) ("When the moving party

19   has carried its burden under Rule 56(c), its opponent must do more than simply show that there is

20   some metaphysical doubt as to the material facts").

21                    e.   Remarks Regarding Women

22          Richardson made two inappropriate comments to Plaintiff.  During their co-travel in early

23   August 2017, Richardson allegedly said, "[f]ine, this is a one-off. Next time your day needs to be

24   packed."  Opp'n at 8.  In the Fall of 2017, while Richardson and Plaintiff were making an office

25   visit, he remarked in the presence of a doctor, "you have like 10 kids, don't you?"  *Id.* at 4.

26   Although these comments may have been insensitive and inappropriate, they are insufficient to

27   establish discrimination.  *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438-39 (9th Cir. 1990)

28   Case No.: 5:18-cv-07540-EJD

United States District Court
Northern District of California

1    (indicating that "stray 'remarks, . . . when unrelated to the decisional process, are insufficient to

2    demonstrate that the employer relied on illegitimate criteria, even when such statements are made

3    by the decisionmaker in issue' "); *see also Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir.

4    1993) (concluding that a superior's comment that "[w]e don't necessarily like grey hair" "was

5    uttered in an ambivalent manner and was not tied directly to [the plaintiff's] termination" and thus

6    was "at best weak circumstantial evidence of discriminatory animus").

7                            f.   Customer Complaint

8             Plaintiff faults Defendant for refusing to disclose the names of her complainants while she

9    was still employed at Align when she could have mended customer relations and argues that the

10   refusal to do so is evidence of pretext.  The argument is unpersuasive.  The customer complaints

11   are documented and undisputed, with the exception of the purported complaint from Dr. Gordon.

12   She did not need knowledge of the identities of the complainants to improve customer relations

13   because Richardson told her the deficient areas of her performance that needed to be addressed.

14   Wall Decl., Dkt. No. 66, Ex. H, Richardson Dep. at 238.  Moreover, Defendant had a legitimate

15   interest in not wanting to involve customers in personnel issues.

16        **B.    "Pattern or Practice" Allegations**

17            Defendant seeks summary judgment to the extent Plaintiff purports to rely on a "pattern or

18   practice" theory of discrimination because a "pattern or practice" claim cannot be asserted by a

19   private, non-class plaintiff.  Mot. at 21-22 (citing *Buchanan, et. al. v. Tata Consultancy Services,*

20   *Ltd.*, No. 15-1696 YGR, 2018 WL 3537083, at *10 (N.D. Cal. Jul. 23, 2018) ("a majority of the

21   circuits . . . have held that the pattern and practice method of proof is not available to private

22   plaintiffs"); *Renati v. Wal-Mart Stores*, No. 19-2525 CRB, 2019 WL 5536206, at *6 (N.D. Cal.

23   Oct. 25, 2019) (agreeing with the "persuasive" reasoning of *Buchanan*)).  In response, Plaintiff

24   clarifies she is asserting an individual claim, not a class action claim.  Accordingly, the issue is

25   moot.

26        **C.    Applicability of The FEHA to Nonresidents**

27            In addition to the arguments already addressed, Defendant contends that the Fourth and

28   Case No.: 5:18-cv-07540-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

Fifth Causes of Action for sex and age discrimination under the FEHA fail as a matter of law because the FEHA does not apply to an employee such as Plaintiff who resided and worked outside of California.  At the pleading stage, the Court addressed Defendant's argument and held the allegations regarding Ayala's role in the alleged adverse employment actions, although thin, were sufficient to support the FEHA claims.  *See* Order Grant'g in Part and Deny'g in Part Def.'s Mot. to Dismiss; Grant'g Def.'s Mot. to Strike; Deny'g Pl.'s Mot. for Relief Under FRCP 39(b), Dkt. No. 41 at 5.  With the benefit of discovery, the evidence shows that Ayala neither placed Plaintiff on the PIP, nor made the decision to terminate her.  Ayala Decl., Dkt. No. 56-4, ¶ 8.  Rather Richardson and Braud made these decisions.  *Id*.  Ayala's involvement was limited to HR responsibilities, such as (1) discussing Plaintiff's performance issues with Richardson, Braud, and Plaintiff; (2) providing guidance to Richardson about the terms and administration of the PIP; and (3) investigating Plaintiff's complaint after being put on the PIP.  *Id*. ¶ 2.

Plaintiff neither addresses the issue in her brief, nor cites to any contradictory evidence.  Instead, Plaintiff makes the unsupported assertion that "Richardson made the decision [to terminate Plaintiff] with Kent Braud and Ayala."  Pl's Separate Statement, Dkt. No. 58, at 14.  Absent any evidence that Ayala committed tortious conduct in California, the Court finds that the FEHA is inapplicable.  *See Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860, (1996) (FEHA inapplicable to "nonresidents employed outside the state when the tortious conduct did not occur in California."); *Johnson v. United Cont'l. Holdings*, No. 12-2730 MMC, 2014 WL 3854073, at *7 (N.D. Cal. 2014) (same).  Defendant is entitled to summary judgment on the Fourth and Fifth Causes of action.

### D.    Retaliation

Plaintiff alleges she was retaliated against for "engaging in protective activity, including taking lactation breaks and reporting discriminatory treatment she received from Richardson."  SAC ¶ 39.  Defendant contends it terminated Plaintiff for legitimate business reasons.

Title VII retaliation claims are analyzed using a burden-shifting framework.  *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001).  To make out a *prima*

Case No.: 5:18-cv-07540-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

*facie* case of retaliation in violation of Title VII, a plaintiff must establish (1) that she acted to protect her VII rights, (2) that an adverse employment action was thereafter taken against her, and (3) that a causal link exists between these two events.  *Id*.  The employer's retaliatory motive must be a "but-for" cause of the adverse employment action, not just a motivating factor.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  "[A]fter the plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action."  *Id*.  "If the employer rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible retaliation."  *Id*.

Here, Plaintiff asserts that she contacted her former boss, Whorton, and told him she was concerned about Richardson's conduct.  That conversation, however, does not rise to the level of a protected activity.  *See Rand v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to 'oppose[ ]' an employer's discriminatory practices."); *see also Khouri v. United Airlines, Inc.*, 32 Fed. Appx. 318, at *1 (9th Cir. 2002) ("At a minimum, a protected complaint should communicate a belief that unlawful activity has occurred.").

On May 11, 2018, Plaintiff emailed HR, and on May 14, 2018, she called HR and left a voicemail message asking how to fill out a complaint against Richardson.  The Court assumes without deciding that these attempts to contact HR before Plaintiff was placed on the PIP are protected activity.[17]  The nearness in time between these attempts to contact HR and the PIP are sufficient to raise a material issue regarding a causal link between protected activity and the alleged adverse employment actions.  Nevertheless, as discussed previously, Defendant had legitimate business reasons for placing Plaintiff on the PIP and ultimately terminating her.  Thus,

---

[17] Plaintiff's May 18, 2018, complaint to HR, however, is protected activity.  *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1285 (9th Cir. 2001) (finding that an employee complaint to the Human Resources department was a protected activity under Title VI).

1   Plaintiff cannot show that a retaliatory motive was the "but-for" cause of the adverse employment

2   actions.  Defendant is entitled to summary judgment on the retaliation claim.

3       **E.     Wrongful Termination Claim**

4       Plaintiff asserts an additional claim for wrongful termination.  As discussed above,

5   Defendant is entitled to summary judgment on the discrimination and retaliation claims, and

6   accordingly her wrongful termination in violation of public policy claim fails.  *See,* e.g., *De*

7   *Horney v. Bank of Am. Nat'l Trust & Sav. Assoc.*, 879 F.2d 459, 465 (9th Cir. 1989) (if underlying

8   discrimination claim fails, the wrongful termination claim also fails).

9       **F.     Punitive Damages**

10      Because none of Plaintiff's claims survive summary judgment, it is unnecessary for the

11   Court to consider the parties' respective arguments regarding punitive damages.

12   **IV.   CONCLUSION**

13      Defendant's motion for summary judgment is GRANTED as to all claims.

14      **IT IS SO ORDERED.**

15   Dated:  March 28, 2022

16

17                                   EDWARD J. DAVILA
                                     United States District Judge

18

19

20

21

22

23

24

25

26

27

28   Case No.: 5:18-cv-07540-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
                                     27

*United States District Court*
*Northern District of California*